IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 15, 2022 Session

## STATE OF TENNESSEE EX REL. DAVID JONATHAN TULIS v. BILL LEE, GOVERNOR OF TENNESSEE ET AL.

**Appeal from the Chancery Court for Hamilton County**
No. 20-0685          Pamela A. Fleenor, Chancellor

_____

**No. E2021-00436-COA-R3-CV**

_____

In this mandamus action, the petitioner/relator, acting on relation to the state, sought to have the trial court, *inter alia*, issue writs requiring the state governor and county health department administrator to comply with Tennessee Code Annotated § 68-5-104, which pertains to "[i]solation or quarantine." The relator named the governor and health department administrator as respondents in both their official and "personal" capacities. Upon the respondents' respective motions to dismiss the petition and following a hearing, the trial court entered separate orders granting the motions to dismiss as to each respondent, finding, as pertinent on appeal, that (1) the court lacked subject matter jurisdiction as to the claim against the governor in a mandamus action, (2) the court lacked subject matter jurisdiction as to the claim against the health department administrator because the relator lacked standing, and (3) the relator otherwise failed to state claims upon which relief could be granted. The trial court also granted the health department administrator's motion for a reasonable award of attorney's fees and costs in defending against the lawsuit in her personal capacity pursuant to Tennessee Code Annotated § 29-20-113. The relator filed motions to alter or amend, which the trial court denied following a hearing in orders certified as final pursuant to Tennessee Rule of Civil Procedure 54.02. The relator timely appealed. Concluding that (1) the trial court's lack of subject matter jurisdiction is dispositive as to the action against the governor in his official capacity, (2) the relator's lack of standing is dispositive as to the action against the county health administrator in her official capacity, and (3) the relator's actions against both respondents in their personal capacities failed to state claims upon which relief could be granted, we affirm the trial court's dismissal orders. We clarify, however, that the relator's lack of standing with respect to his claim against the county health administrator did not equate to a lack of subject matter jurisdiction in the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and W. NEAL MCBRAYER, J., joined.

David Jonathan Tulis, Soddy-Daisy, Tennessee, Pro Se.

Herbert H. Slatery, III, Attorney General and Reporter; Andrée S. Blumstein, Solicitor General; and Janet M. Kleinfelter, Deputy Attorney General, Public Interest Division, for the appellee, Bill Lee, Governor of Tennessee, in his personal capacity and in his official capacity.

Rheubin M. Taylor, County Attorney, and Sharon McMullan Milling, Assistant County Attorney, Chattanooga, Tennessee, for the appellee, Rebekah Barnes, Administrator, Hamilton County Health Department, in her personal capacity and in her official capacity.

**OPINION**

I.  Factual and Procedural Background

The petitioner, David Jonathan Tulis ("Relator"), acting in relation to the State of Tennessee and proceeding *pro se*, initiated this action by filing a "Petition in equity and for writ of mandamus" in the Hamilton County Chancery Court ("trial court") on October 2, 2020.  Relator named as respondents Tennessee Governor Bill Lee ("Governor Lee"), "in his personal capacity and in his official capacity," and Hamilton County Health Administrator Rebekah Barnes ("Administrator Barnes"), "in her personal capacity and in her official capacity" (collectively, "Respondents").  Relator's petition and attached affidavit spanned thirty-nine pages and included many broad allegations regarding governmental officials' handling of the Covid-19 pandemic, particularly measures implemented by Respondents.  Under an opening section of his petition entitled, "Statement of the Case," Relator set forth his overall grievance:

> This remedy is required immediately to stop the abuse of unwarranted Police Power committed by the respondents in dereliction of the duty imposed upon them pursuant to T.C.A. 68-5-104, or the Tennessee constitution, committing, or acting by omission to commit, unwarranted statewide restraint of life, liberty and property.

> Creating an extraordinary disaster, on or about March 12, 2020, Gov. Bill Lee declared a communicable disease health emergency, with Rebekah Barnes' office issuing Directive No. 1 of the Hamilton County health department, effective July 10, 2020, and taking various actions for

flulike symptoms, given the name "COVID-19" disease, without benefit of due process or the fulfillment by respondents, though they have a public legal non-discretionary duty, pursuant to T.C.A. § 68-5-104, to determine or find evidence for the infectious agent, contagion or communicable source for the disease, the existence of which is merely presumptive, not actual.

It is commonly known there is no test for the presumptive contagion or infectious agent of COVID-19 despite official misrepresentations or assurances to the contrary. Respondents act without bona fide demonstrable exigence or jurisdiction and by their unwarranted and unconstitutional premature actions or arbitrary and capricious, even deadly, purported mitigation measures are causing irreparable harm and injustice, wreaking havoc on the relator, fellow Tennesseans and the state of Tennessee.

This remedy is to stop the abuse of unwarranted police power committed by the respondents in dereliction of the duty imposed upon them through T.C.A. 68-5-104.

The relator through this petition and verified complaint demands the respondents' wrongful acts done under color of authority be halted, emptied of all force and effect and be declared void ab initio; in addition, that they be found a fraud and waste upon the public treasury that respondents have a duty to protect. The relator demands the court do anything else it deems serves the ends of justice to relieve the relator, fellow Tennesseans and state of Tennessee of the ongoing wrongs and oppression.

Given there is no adequate remedy at law, this evidence-supported extraordinary remedy of imperative and public cause demands this court quash all relevant emergency orders or administrative actions, official acts existing without the benefit of an objective determination for the infectious agent of contagion or communicable source.

(Paragraph numbering omitted.)

We note that the issuance of a writ of mandamus is an extraordinary remedy, *State ex rel. Weaver v. Ayers*, 756 S.W.2d 217, 220 (Tenn. 1988), and that "[t]he general rule regarding the issuance of a writ of mandamus is that the writ is not issued to control or coerce discretionary power by a board or officer, but will lie to enforce the performance of an official duty and to compel the exercise of power," *Tusant v. City of Memphis*, 56

S.W.3d 10, 18 (Tenn. Ct. App. 2001). The statute primarily relied upon by Relator to allege that Respondents were in dereliction of duty, Tennessee Code Annotated § 68-5-104 (2013), addresses "[i]solation or quarantine" and provides:

(a)(1) It is the duty of the local health authorities, on receipt of a report of a case, or suspected case, of disease declared to be communicable, contagious, or one which has been declared by the commissioner of health to be subject to isolation or quarantine, to confirm or establish the diagnosis, to determine the source or cause of the disease and to take such steps as may be necessary to isolate or quarantine the case or premise upon which the case, cause or source may be found, as may be required by the rules and regulations of the state department of health.

(2) The commissioner is authorized and directed to promulgate and publish such rules and regulations as may be necessary to prevent the spread of contagious or communicable diseases in order to protect the public health and welfare.

(b) Any person isolated or quarantined in accordance with any statute or rule or regulation promulgated and published in accordance with statutes relating to isolation or quarantine, who willfully escapes from such isolation or quarantine, commits a Class B misdemeanor.

(c) Whenever any one of the local health authorities, either municipal or county as the case may be, isolates, quarantines or placards any person or house for communicable diseases, it is the duty of the health official to deliver or cause to be delivered to the head of the household a copy of this law or such portion of this law as may pertain to the particular case under consideration.

The statute was initially enacted in 1905. Relator appears to primarily contend that Respondents have not been able to produce information concerning "a case" of Covid-19 and its "source or cause" as set forth in subsection (a)(1) of the statute. *See* Tenn. Code Ann. § 68-5-104(a)(1).

In his petition, Relator "demand[ed]" that the trial court:

• Find that respondents are acting outside the scope of their lawful authority under statute and the Tennessee constitution, causing

- 4 -

irreparable harms to relator, fellow Tennesseans and the state of Tennessee;

- Set aside or quash, or as appropriate, any and all orders and or decrees imposed upon the people and businesses in Hamilton County and statewide relative to any COVID-19 or related subject matter;

- Direct respondents, or their Office, to faithfully follow the law or face contempt asserted by either the court sua sponte or on relation of the relator, where derelict of law;

- Require respondents to keep accurate records. The intent of this directive is to eliminate fraudulent records fraudulently used to create a color of authority which cannot exist as a matter of law and which immediately and irreparably infringes the rights and injures property and peaceful settlement of the relator, fellow Tennesseans and the state of Tennessee.

- By ***rectification, reformation, or whatever this equity court may find just***, ensure the Rules reflect the legislative intent, purpose, function, etc., of T.C.A. § 68-5-104, consistent with the Tennessee constitution which the respondent(s) fraudulently, or through other wrong, breach without such correction.

  * * *

- Maintain oversight that this sort of government-caused pseudo-crisis and disaster be prevented more quickly and efficiently to the relator or fellow Tennesseans, or within the inherent power of the Judicial branch to check the excesses of a co-equal branch;

- Order equitable compensation, to the extent available to chancery, to persuade and impress the conscience of each respondent from repeating wrongs cited in this complaint, sending a message to others so inclined;

- Make other redress within the power of this court to the ends justice requires, not limited to, further compensation, reimbursement, indemnification or reparation for benefits derived from, or for loss or injury caused to the relator, fellow Tennesseans or the state of Tennessee.

(Emphasis in original; paragraph numbering and Relator's examples of "Rules" to be "rectified" or "reformed" omitted.) Relator also requested "appropriate costs, fees or expenses etc."

In his affidavit attached to his petition, Relator described purportedly personal injuries due to Covid-19 orders, including, *inter alia*, suffering (1) an "arrest threat" on July 31, 2020, when Hamilton County Sheriff's officers insisted that he vacate the courthouse premises because he refused to wear a mask; (2) a "religious injury" when his church, the North Shore Fellowship, conducted online services for several months and then promulgated a rule that masks must be worn in the church building when in-person services resumed; (3) an "arrest threat at worship" when he exited his car while attending a "parking lot" worship service on April 12, 2020, at Metro Tabernacle in Chattanooga and was told by a police officer that he had to stay in his vehicle or risk arrest; (4) an "honest government services injury," causing him to lose his "right of free association" with other Hamilton County residents; and (5) "economic damage," interfering with his ability to buy and sell goods and services. Relator also attached correspondence with various county and state officials in which he had made public records requests related to the originating "case" of Covid-19 in Tennessee, *see* Tenn. Code. Ann. § 68-5-104(a)(1), and the rationale for executive and administrative orders related to the pandemic.

On October 19, 2020, seventeen days after filing his petition, Relator filed a "Motion for expedited decree pro confesso and for summary adjudication from the record." Administrator Barnes's counsel filed a notice of appearance on October 23, 2020, and a motion for extension of time in which to file a response to the petition on November 5, 2020. Relator then filed a motion objecting to Administrator Barnes's requested extension and "for Final Disposition" on November 10, 2020. Upon the trial court's setting a hearing for December 2, 2020, Relator filed a "Motion to reconsider hearing order and for immediate disposition" on November 16, 2020, and separate motions for default judgment as to each of the Respondents three days later. In part, Relator averred in his motion for default judgment against Governor Lee that the petition had been served on Governor Lee on October 6, 2020, the day that Administrator Barnes had admittedly been served. Relator attached to his motion a letter from the Chattanooga Postmaster stating that an express mail envelope sent by Relator, purportedly addressed to Governor Lee, had been delivered to the address on the envelope on October 6, 2020. According to the Postmaster, Relator had paid for a return receipt with signature but "there has been no activity on this return receipt and it appears to be lost or not returned by the addressee."

On November 25, 2020, Governor Lee, acting through the Attorney General and Reporter, filed a motion to dismiss Relator's petition, pursuant to Tennessee Rule of Civil Procedure 12.02(1) and (6), for lack of subject matter jurisdiction and failure to state a

claim upon which relief could be granted.  As to subject matter jurisdiction, Governor Lee contended that, pursuant to Tennessee Code Annotated § 4-1-205, he could only be sued in his official capacity in Davidson County.  Governor Lee further contended that Relator had failed in his petition to state any claim against Governor Lee in his personal capacity for which relief could be granted.  Governor Lee also asserted that Relator had failed to state a claim for writ of mandamus, that Relator lacked standing to seek declaratory or injunctive relief, and that any claims for equitable compensation were barred by sovereign immunity.

In response, Relator filed a "Motion to strike motion to dismiss and, in the alternative, motion for misjoinder and transfer, and for other purposes, in the interest of justice" on December 1, 2020.  In this motion, he argued, *inter alia*, that Governor Lee's motion to dismiss was improper largely because Governor Lee did not answer the substantive allegations of the petition.  In the alternative, Relator requested transfer of this action to Davidson County.

The trial court conducted a hearing on December 2, 2020, on Relator's "Motion for expedited decree pro confesso and for summary adjudication from the record" and his motion for default judgment as to Administrator Barnes.  In separate orders entered on December 9, 2020, the trial court respectively dismissed Relator's motion for default expedited decree *pro confesso* and default judgment as to Administrator Barnes upon finding that Administrator Barnes was not in default and granted Administrator Barnes's motion for an extension of time in which to file a response to Relator's petition.  Administrator Barnes filed a motion to dismiss the petition on December 4, 2020, asserting that Relator lacked standing to bring the petition against her and that he sought to enforce discretionary duties that were not subject to a writ of mandamus.  Administrator Barnes also requested attorney's fees and costs pursuant to Tennessee Code Annotated § 29-20-113.

On January 4, 2021, the trial court entered an order denying Relator's motion for expedited decree *pro confesso* and for default judgment specifically as to Governor Lee. The court found that Governor Lee was not in default because he had been served with the petition on October 26, 2020, and had responded to the petition by filing a timely motion to dismiss.

Also on January 4, 2021, Relator filed two motions, one a motion to strike Administrator Barnes's motion to dismiss and one entitled, "Motion to vacate hearing order & for hearing order under constitution."  In the latter motion, Relator objected to the trial court's setting of a telephonic hearing for January 11, 2021, positing that such a hearing was an unconstitutional violation of the public's right to an open court system

pursuant to Article I, section 17, of the Tennessee Bill of Rights.[1]  He further argued, *inter alia*, that this action was a "[p]roceeding[] directly related to the COVID-19 public health emergency" and was therefore an exception to the Tennessee Supreme Court's December 22, 2020 order regarding pandemic court protocols.

Following a telephonic hearing conducted on January 11, 2021, the trial court entered two separate orders on January 21, 2021, granting Governor Lee's and Administrator Barnes's respective motions to dismiss Relator's petition.  In its order dismissing the action against Governor Lee, the trial court did so in three parts, concluding by stating:

> WHEREFORE it is hereby,
>
> ORDERED that the motion to dismiss for failure to state a claim against Governor Lee in his official capacity is GRANTED; it is further
>
> ORDERED that the motion to dismiss for failure to state a claim against Bill Lee in his personal capacity is GRANTED; it is further
>
> ORDERED that the motion to dismiss for lack of subject matter jurisdiction is GRANTED.

The court analyzed the mandamus petition for failure to state a claim, first as to Governor Lee in his official capacity and then in his personal capacity, before analyzing Relator's petition for lack of subject matter jurisdiction.

In determining that Relator's petition failed to state a claim upon which relief could be granted against Governor Lee in his official capacity, the trial court found that (1) Tennessee Code Annotated § 68-5-104 does not set forth any ministerial duty of the governor for which mandamus could issue and (2) the instant mandamus action was procedurally deficient because Relator did not submit an alternative writ pursuant to Tennessee Code Annotated § 29-25-102.  The court also confirmed its earlier finding that Governor Lee was not in default, noting that the issuance of a writ of mandamus is discretionary and that "unless a prima facie case of mandamus be stated, the defendant need not answer," citing *Jellicorse v. Russell*, 1 S.W.2d 1101, 1012 (Tenn. 1928); *Gentry*

---

[1] Article I, section 17 of the Tennessee Constitution provides:

> That all courts shall be open; and every man, for an injury done him in his lands, goods, person or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial, or delay.  Suits may be brought against the state in such manner and in such courts as the Legislature may by law direct.

*v. Former Speaker of House Casada*, No. M2019-02230-COA-R3-CV, 2020 WL 5587720, at *8 (Tenn. Ct. App. Sept. 17, 2020). As to Governor Lee in his personal capacity, the court found that Relator had failed in his petition to make any allegations against Governor Lee personally and had therefore failed to state a claim upon which relief could be granted.

In determining that it lacked subject matter jurisdiction over the mandamus action, the trial court found that (1) no Tennessee court has the authority to issue a writ of mandamus requiring the governor to perform any act; (2) Relator lacked standing to assert any claims beyond his request for a writ of mandamus in part because the writ was not the appropriate vehicle for other claims and in part because the injuries alleged by Relator were ones shared by all citizens; (3) Relator's requests for "'equitable compensation, reimbursement, indemnification or reparation'" (quoting the petition) were barred by sovereign immunity; and (4) Relator had failed to bring his action against Governor Lee in Davidson County. The court also denied Relator's request to transfer the action to Davidson County, determining that because the trial court lacked subject matter jurisdiction, any order it set forth other than one of dismissal would be "null and void" and that because Relator had "failed to state a justiciable claim against the Governor," "there was no action for [the trial court] to transfer to Davidson County."

Likewise, in its concomitantly entered order granting Administrator Barnes's motion to dismiss, the trial court did so in three parts, concluding by stating in pertinent part:

> WHEREFORE it is hereby
>
> ORDERED that the motion to dismiss for failure to state a claim against Barnes in her official capacity is GRANTED; it is further
>
> ORDERED that the motion to dismiss for failure to state a claim against Barnes in her individual capacity is GRANTED; it is further
>
> ORDERED that Barnes' motion to dismiss for lack of subject matter jurisdiction is GRANTED[.]

Concerning Administrator Barnes, the trial court first determined that Relator had failed to state a claim upon which relief could be granted via writ of mandamus. Specifically, the court found that Relator had "failed to allege any non-discretionary, ministerial act in T.C.A. 68-5-104 that [Administrator Barnes] failed to do" and that "[a]s such, Relator [had] failed to state a claim for a writ of mandamus to compel Barnes to perform any ministerial act under T.C.A. 68-5-104." In so finding, the court noted in part

- 9 -

that the official referred to specifically in Tennessee Code Annotated § 68-5-104(a)(2) is the "commissioner," which, pursuant to Tennessee Code Annotated § 68-1-102(a) (2013), is the head of the Tennessee Department of Health. The court also found that language in the statute that would be applicable to Administrator Barnes as a "'local health authorit[y]'" is "inherently discretionary" in that it provides for local health authorities to "'take such steps *as may be necessary*' to quarantine, to confirm, or to determine the source." Additionally, the court found that Relator had failed to state a claim upon which relief could be granted as to the mandamus petition due to the procedural deficiencies also noted in the dismissal order concerning Governor Lee. As to the action against Administrator Barnes in her personal capacity, the court found that Relator had failed to make any allegations against Administrator Barnes personally and had therefore failed to state a claim upon which relief could be granted.

In granting Administrator Barnes's motion to dismiss the mandamus action for lack of subject matter jurisdiction, the trial court determined that (1) Relator lacked standing because he had failed to assert a "right to relief" under Tennessee Code Annotated § 68-5-104 in that he had not averred that he was quarantined; (2) Relator lacked standing to assert any claims beyond his request for a writ of mandamus in part because the writ was not the appropriate vehicle for other claims and in part because the injuries alleged by Relator were ones shared by all citizens; and (3) Relator's requests for "compensation, reimbursement, indemnification or reparation" against Administrator Barnes were essentially claims against Hamilton County and therefore were subject to the exclusive jurisdiction of circuit court pursuant to Tennessee Code Annotated § 29-20-307 (2012) of the Tennessee Governmental Tort Liability Act. Finally, the trial court awarded to Administrator Barnes reasonable attorney's fees in defending against the lawsuit in her personal capacity pursuant to Tennessee Code Annotated § 29-20-113.

The trial court subsequently entered three orders denying various motions that had been filed by Relator prior to the January 2021 hearing. Treating Relator's motions objecting to the December 2, 2020 hearing as Tennessee Rule of Civil Procedure 59 motions to alter or amend, the court entered two separate orders on January 27, 2021, and February 1, 2021, respectively denying the motions as to Relator's claims against Governor Lee and Administrator Barnes. In an order entered on January 28, 2021, the court denied Relator's "Motion to vacate hearing order & for hearing under constitution," noting in part that the January 2021 telephonic hearing to which Relator objected as not public had actually been conducted on a "county public bridge line" and had been attended by members of the public via telephone. In another order entered on February 1, 2021, the court noted that prior to hearing arguments telephonically on January 11, 2021, the court had offered to postpone the hearing until after the Tennessee Supreme Court's order suspending in-person proceedings was due to expire and that Relator had declined

the offer, electing to proceed with the telephonic hearing. The court thereby concluded in its order that the telephonic hearing had proceeded appropriately.

On February 16, 2021, Relator filed an "Affidavit & motion to alter Lee dismissal order in interest of equity, justice." He then filed a comparable affidavit and motion as to the dismissal order concerning Administrator Barnes on February 22, 2021. In March 2021, Relator filed a "Notice of objection to hearing, injustice, delay, prejudice" and a "Notice of judicial department mass fraud," attaching copies of Tennessee Supreme Court orders concerning the pandemic to the latter. Governor Lee and Administrator Barnes each filed a response objecting to Relator's motions to alter the respective dismissal orders on March 26, 2021, and Administrator Barnes attached transcripts of the December 2020 and January 2021 hearings to her response. Pursuant to Tennessee Code Annotated § 29-20-113, Administrator Barnes requested an additional award of reasonable attorney's fees incurred in defending against Relator's post-judgment motion.

The trial court conducted a telephonic hearing concerning Relator's outstanding motions on March 30, 2021. During this hearing, Administrator Barnes requested an additional award of attorney's fees related to responding to Relator's post-judgment motions. In an order entered on April 5, 2021, the court granted Administrator Barnes's request and directed her to submit an affidavit for fees within two days. Administrator Barnes filed an affidavit for attorney's fees the next day. Relator subsequently filed an "Affidavit & Motion to Object to Billing by Party in Fraud," to which Administrator Barnes filed a response.

On April 21, 2021, the trial court entered separate orders denying Relator's motions to alter or amend the dismissal orders respectively as to Governor Lee and as to Administrator Barnes. The court determined, *inter alia*, that despite Relator's arguments to the contrary, the court had considered all of his pleadings and filings and that Relator had failed to assert any legitimate grounds under Tennessee Rule of Civil Procedure 59 for altering the dismissal orders. In each order, the Court also denied "any other motions not specifically ruled upon previously." Within the order pertaining to Administrator Barnes, the court awarded to her attorney's fees in the amount of $10,150.00 plus $416.82 in costs. The court certified each order as final pursuant to Tennessee Rule of Civil Procedure 54.02. Relator timely appealed.

## II. Issues Presented

Relator presents his issues in a one-paragraph narrative format, which we quote here as it appears in his principal appellate brief:

The issues presented for review are that the chancery court incorrectly asserts relator has no standing to sue; incorrectly finds the petition does not present anything justiciable before an equity jurisdiction; incorrectly denies the petition; incorrectly finds that relator fails to state any claim for which relief could be granted; incorrectly denies the existence of subject matter jurisdiction, either generally or specifically as to the governor pursuant to the venue of privilege; the failure of due process generally and sufficiently material to overthrow the final order, such as the deprivation of timely equity relief, or transfer; allowing fraud; breach of the separation of powers; breach of trust; fraud on the court; trespass on the case; failure to acknowledge material and relevant facts or testimony; and prejudice, whether independent act or cumulatively.

Governor Lee has summarized Relator's four essential issues, particularly as related to the action against Governor Lee, as follows with our slight modifications:

1.   Whether the trial court erred by dismissing this action against Governor Lee for lack of subject matter jurisdiction based on Relator's failure to file the petition in Davidson County.

2.   Whether the trial court erred by dismissing Relator's petition for writ of mandamus.

3.   Whether the trial court erred by dismissing Relator's additional claims for lack of standing.

4.   Whether the trial court erred by violating Relator's due process rights.

Administrator Barnes has summarized two additional issues, which we have restated slightly as follows:

5.   Whether the trial court erred by dismissing this action against Administrator Barnes.

6.   Whether the trial court erred by determining that it did not have subject matter jurisdiction because Relator lacked standing.

- 12 -

III. Standard of Review

Our review of the trial court's judgment following a non-jury proceeding is *de novo* upon the record with a presumption of correctness as to the trial court's findings of fact unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 204 (Tenn. 2012). "In order for the evidence to preponderate against the trial court's findings of fact, the evidence must support another finding of fact with greater convincing effect." *Wood v. Starko*, 197 S.W.3d 255, 257 (Tenn. Ct. App. 2006) (citing *Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.3d 291, 296 (Tenn. Ct. App. 2001)). We review the trial court's conclusions of law *de novo* with no presumption of correctness. *Hughes v. Metro. Gov't of Nashville & Davidson Cnty*, 340 S.W.3d 352, 360 (Tenn. 2011).

In this action, the trial court dismissed Relator's petition as to both Governor Lee and Administrator Barnes for lack of subject matter jurisdiction and for failure to state a claim upon which relief could be granted. As to a Tennessee Rule of Civil Procedure 12.02(1) motion to dismiss based on lack of subject matter jurisdiction, our Supreme Court has explained:

> A motion to dismiss for lack of subject matter jurisdiction falls under Tennessee Rule of Civil Procedure 12.02(1). The concept of subject matter jurisdiction involves a court's lawful authority to adjudicate a controversy brought before it. *See Meighan v. U.S. Sprint Communications Co.*, 924 S.W.2d 632, 639 (Tenn. 1996); *Standard Sur. & Casualty Co. v. Sloan*, 180 Tenn. 220, 230, 173 S.W.2d 436, 440 (1943). Subject matter jurisdiction involves the nature of the cause of action and the relief sought, *see Landers v. Jones*, 872 S.W.2d 674, 675 (Tenn. 1994), and can only be conferred on a court by constitutional or legislative act. *See Kane v. Kane*, 547 S.W.2d 559, 560 (Tenn. 1977); *Computer Shoppe, Inc. v. State*, 780 S.W.2d 729, 734 (Tenn. Ct. App. 1989). Since a determination of whether subject matter jurisdiction exists is a question of law, our standard of review is de novo, without a presumption of correctness. *See Nelson v. Wal-Mart Stores, Inc.*, 8 S.W.3d 625, 628 (Tenn. 1999).

*Northland Ins. Co. v. State*, 33 S.W.3d 727, 729 (Tenn. 2000).

Regarding motions to dismiss for failure to state a claim under Tennessee Rule of Civil Procedure 12.02(6), our Supreme Court has further explained:

> A Rule 12.02(6) motion challenges only the legal sufficiency of the complaint, not the strength of the plaintiff's proof or evidence. The

resolution of a 12.02(6) motion to dismiss is determined by an examination of the pleadings alone.  A defendant who files a motion to dismiss "'admits the truth of all of the relevant and material allegations contained in the complaint, but . . . asserts that the allegations fail to establish a cause of action.'"  *Brown v. Tenn. Title Loans, Inc.*, 328 S.W.3d 850, 854 (Tenn. 2010) (quoting *Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 516 (Tenn. 2005)).

In considering a motion to dismiss, courts "'must construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences.'"  *Tigg v. Pirelli Tire Corp.*, 232 S.W.3d 28, 31-32 (Tenn. 2007) (quoting *Trau-Med* [*of Am., Inc. v. Allstate Ins. Co.*], 71 S.W.3d [691,] 696 [(Tenn. 2002)]).  A trial court should grant a motion to dismiss "only when it appears that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief."  *Crews v. Buckman Labs. Int'l, Inc.*, 78 S.W.3d 852, 857 (Tenn. 2002).  We review the trial court's legal conclusions regarding the adequacy of the complaint de novo.

*Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011) (other internal citations omitted).

In contrast, a trial court's decision concerning whether to grant a writ of mandamus is a discretionary one.  *Grant v. Foreperson for Bradley Cnty. Grand Jury*, No. E2009-01450-COA-R3-CV, 2010 WL 844912, at *5 (Tenn. Ct. App. Mar. 11, 2010) ("[I]t has long been settled in Tennessee that the granting of the writ of mandamus, even when the right thereto is clear, lies in the sound discretion of the court.").  As this Court has explained, "a trial court will be found to have 'abused its discretion' only when it applies an incorrect legal standard, reaches a decision that is illogical, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party."  *In re Estate of Greenamyre*, 219 S.W.3d 877, 886 (Tenn. Ct. App. 2005) (internal citations omitted).

We respect Relator's decision to proceed without benefit of counsel.  We note that in reviewing pleadings, we "must give effect to the substance, rather than the form or terminology of a pleading."  *Stewart v. Schofield*, 368 S.W.3d 457, 463 (Tenn. 2012) (citing *Abshure v. Methodist Healthcare-Memphis Hosp.*, 325 S.W.3d 98, 104 (Tenn. 2010)).  We note also that pleadings "prepared by pro se litigants untrained in the law should be measured by less stringent standards than those applied to pleadings prepared by lawyers."  *Stewart*, 368 S.W.3d at 462 (citing *Carter v. Bell*, 279 S.W.3d 560, 568 (Tenn. 2009); *Hessmer v. Hessmer*, 138 S.W.3d 901, 903 (Tenn. Ct. App. 2003); *Young*

*v. Barrow*, 130 S.W.3d 59, 63 (Tenn. Ct. App. 2003)).  Parties proceeding without benefit of counsel are "entitled to fair and equal treatment by the courts," but we "must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe." *Hessmer v. Hessmer*, 138 S.W.3d 901, 903 (Tenn. Ct. App. 2003).

IV.  Governor Lee's Motion to Dismiss

A.  Subject Matter Jurisdiction as to Governor Lee in Official Capacity

Relator contends that the trial court erred by dismissing his "Petition in equity and for writ of mandamus" against Governor Lee.  In denying Relator's motion to alter or amend the dismissal order as to Governor Lee, the trial court emphasized that it had determined in its dismissal order that "no court can issue a writ of mandamus requiring the Governor to perform any act, period."  The trial court thereby found that it lacked subject matter jurisdiction to issue a writ of mandamus as to Governor Lee.  We agree with this conclusion as a matter of law.  Moreover, we determine this lack of subject matter jurisdiction to be dispositive of Relator's mandamus action against Governor Lee in his official capacity.

We note that although Governor Lee raised a subject matter jurisdiction challenge in his motion to dismiss based on Relator's failure to file the mandamus action in Davidson County, he did not raise an argument, either in his motion to dismiss or during the related hearing, concerning the general lack of authority in state courts to issue a writ of mandamus against the governor.  At the close of the hearing, the trial court took the matter under advisement.  The court subsequently found, *sua sponte*, in its order dismissing the action against Governor Lee that no court in Tennessee had the authority to issue a writ of mandamus requiring the governor to perform any action.  Governor Lee then adopted this postulate in his response objecting to Relator's motion to alter or amend the dismissal order and has adopted it on appeal as well.  Inasmuch as "issues of subject matter jurisdiction can be raised at any time by the parties or the court *sua sponte*," *see Nandigam Neurology, PLC v. Beavers*, 639 S.W.3d 651, 667 (Tenn. Ct. App. 2021), we discern no error in the trial court's *sua sponte* introduction of this finding in its initial dismissal order.

The challenge here to subject matter jurisdiction as to Governor Lee is a facial one, meaning that it is a challenge to the petition itself, both as a mandamus action against the governor and as an action against the governor filed in a county other than Davidson County.  As our Supreme Court has explained:

- 15 -

Litigants may take issue with a court's subject matter jurisdiction using either a facial challenge or a factual challenge. *See, e.g.*, *Schutte v. Johnson*, 337 S.W.3d 767, 769-70 (Tenn. Ct. App. 2010); *Staats v. McKinnon*, 206 S.W.3d [532,] 542 [(Tenn. Ct. App. 2006)]. A facial challenge is a challenge to the complaint itself. *See Schutte v. Johnson*, 337 S.W.3d at 769. Thus, when a defendant asserts a facial challenge to a court's subject matter jurisdiction, the factual allegations in the plaintiff's complaint are presumed to be true. *See, e.g.*, *Staats v. McKinnon*, 206 S.W.3d at 542-43.

Alternatively, "[a] factual challenge denies that the court actually has subject matter jurisdiction as a matter of fact even though the complaint alleges facts tending to show jurisdiction." *Staats v. McKinnon*, 206 S.W.3d at 543. Thus, the factual challenge "attacks the facts serving as the basis for jurisdiction." *Schutte v. Johnson*, 337 S.W.3d at 770.

*Redwing v. Catholic Bishop for Diocese of Memphis*, 363 S.W.3d 436, 445-46 (Tenn. 2012). The trial court's decision regarding subject matter jurisdiction as to the mandamus action against Governor Lee therefore presents a question of law, which we review with no presumption of correctness.[2] *Id.*

In support of its determination that no Tennessee court has subject matter jurisdiction to issue a writ of mandamus requiring the governor to perform an act, the trial court relied on *State ex rel. Latture v. Frazier*, 86 S.W. 319, 320 (Tenn. 1905), in which our Supreme Court held:

The Governor of the state constitutes one of the co-ordinate departments of the government, and he cannot be compelled by mandamus to perform any act which devolves upon him as Governor.

In *Clements v. Roberts*, 230 S.W. 30, 35 (Tenn. 1921), the High Court cited *Frazier* (alternatively styled as *State ex rel. v. Board of Inspectors*) with approval as one of several decisions confirming that Tennessee courts do not have the authority to issue a

---

[2] Throughout the proceedings in the trial court and on appeal, Relator refers to his factual allegations as "admitted" by Respondents because the allegations were not directly addressed in Respondents' respective motions to dismiss. Relator misinterprets the functions of a Tennessee Rule of Civil Procedure 12.02(1) facial challenge to subject matter jurisdiction and of a Tennessee Rule of Civil Procedure 12.02(6) motion to dismiss for failure to state a claim upon which relief can be granted. These motions are challenges to the viability of the petition even in the event that all of the facts alleged in the petition would eventually be proven as true; the dismissal motions are not admissions by Respondents that the facts alleged would be proven true at trial.

writ of mandamus requiring the governor to perform any act. For example, the *Clements* Court noted that in *Jonesboro, Fall Branch & Blair's Gap Tpk. Co. v. Brown*, 67 Tenn. 490, 492-94 (1875), "it was expressly held that the courts of this state have no jurisdiction, by mandamus, to compel the Governor to perform any duty devolved upon him as such officer by the Constitution and laws of the state." *Clements*, 230 S.W. at 35-36. As the *Jonesboro, Fall Branch* Court had explained:

> It is said if this jurisdiction be not granted there is no remedy in cases where the Governor refuses to perform his duty with respect to the rights of the citizens. If the duty of performing a certain act is by law devolved upon the Governor, and in the exercise of his judgment and discretion—and it is difficult to imagine any act to be performed by a Governor where some degree of judgment and discretion is not involved— he decides against the claim of the citizen, the citizen has had his remedy. If the Governor corruptly act in violation of law and right, he may be impeached. It does not follow, because the right claimed depends upon a construction of our laws, that the court must therefore decide it. The courts can only decide in those cases where by law they have jurisdiction.

*Jonesboro, Fall Branch*, 67 Tenn. at 493-94.[3]

This longstanding precedent in Tennessee has never been overturned by our Supreme Court and will not be disturbed by this Court. The trial court properly found that no Tennessee court has subject matter jurisdiction to issue a writ of mandamus requiring the governor to perform an act and that the trial court therefore did not have subject matter jurisdiction to entertain a petition for a writ of mandamus against Governor Lee. Determining this lack of subject matter jurisdiction to be dispositive of Relator's petition for writ of mandamus against Governor Lee in his official capacity, we affirm the trial court's dismissal of the petition on this basis.

The trial court also found that it lacked subject matter jurisdiction to entertain Relator's petition as to Governor Lee in his official capacity because the petition had not been filed in Davidson County as the seat of state government. *See* Tenn. Code Ann. § 4-1-205 (2021) ("The city of Nashville, in the county of Davidson, is the seat of the state government."). Although Relator challenged this conclusion, as he does on appeal, he alternatively requested transfer of the petition to Davidson County pursuant to Tennessee Code Annotated § 16-1-116 (2021), which provides for transfer of, as pertinent here, "an

---

[3] While noting some jurisdictions in which state supreme courts had held that subject matter jurisdiction could lie with a court to issue a writ of mandamus against a governor if the required act was deemed to be purely ministerial with no discretion involved, the Tennessee Supreme Court rejected this approach. *Jonesboro, Fall Branch*, 67 Tenn. at 492-93.

original civil action" when "a state or county court of record or a general sessions court . . . determines that it lacks jurisdiction" and that a transfer "is in the interest of justice."

Having determined that no Tennessee court has subject matter jurisdiction to issue a writ of mandamus to compel the governor to perform an act, we further determine the Davidson County and transfer issues to be pretermitted as moot in regard to Relator's mandamus action against Governor Lee. We note that in interpreting Relator's petition, the trial court also found that some of Relator's demands appeared to invoke requests for declaratory and injunctive relief, for instance, Relator's request that Respondents' alleged "wrongful acts done under color of authority be halted, emptied of all force and effect and be declared void ab initio." Relator, however, at all times before the trial court and on appeal has continued to insist that his action is one for mandamus, albeit with a broad interpretation of what the writ he requests would include. We determine that the gravamen of Relator's petition was for mandamus. *See Staats v. McKinnon*, 206 S.W.3d 532, 542 (Tenn. Ct. App. 2006) ("[W]hen a court's subject matter jurisdiction is questioned, it must first ascertain the nature or gravamen of the case.").

Insofar as Relator requested any additional relief against Governor Lee in his official capacity, it was based on his request for mandamus, and the trial court therefore did not have subject matter jurisdiction to consider it. Likewise, any additional issues related to Relator's mandamus action against Governor Lee in his official capacity are pretermitted as moot due to lack of subject matter jurisdiction. *See First Am. Trust Co. v. Franklin-Murray Dev. Co., L.P.*, 59 S.W.3d 135, 141 (Tenn. Ct. App. 2001) ("The lack of subject matter jurisdiction is so fundamental that it requires dismissal whenever it is raised and demonstrated."); *see, e.g.*, *Sw. Williamson Cnty. Cmty. Ass'n v. Saltsman*, 66 S.W.3d 872, 876 (Tenn. Ct. App. 2001) (pretermitting consideration of all other issues upon finding that the trial court lacked subject matter jurisdiction to hear a petition for writ of mandamus).

### B. Governor Lee in Personal Capacity

In dismissing Relator's action against Governor Lee in his personal capacity, the trial court stated in its dismissal order:

> Although the Relator styles the suit as one against Bill Lee in his personal capacity and in his official capacity, the Relator only makes claims against Mr. Bill Lee as the Governor of the State of Tennessee. As there are no allegations against Mr. Lee in his personal capacity, the Court concludes the motion to dismiss for failure to state a claim against Bill Lee in his personal capacity is also well-taken.

The trial court thereby granted Governor Lee's motion to dismiss the action against him in his personal capacity pursuant to Tennessee Rule of Civil Procedure 12.02(6) for failure to state a claim upon which relief could be granted.

On appeal, Relator asserts that his "action is upon the man William Byron Lee," in his office and in his personal capacity, alleging that "acting under color of law," Governor Lee as an individual "harm[ed] relator, and fraudulently." However, upon thorough review of Relator's petition, we agree with the trial court that Relator made no actual allegations against Governor Lee in his personal capacity and that all allegations stemmed from Governor Lee's official actions or what Relator claimed those official actions should have been. Construing the petition liberally, as we must when a Rule 12.02 motion to dismiss is at issue, we determine that Relator can prove no set of facts that would entitle Relator to relief against Governor Lee in his personal capacity. *See Webb*, 346 S.W.3d at 426. The trial court did not err in granting Governor Lee's Rule 12.02(6) motion to dismiss as to Relator's action against Governor Lee in his personal capacity.

## V. Administrator Barnes's Motion to Dismiss

### A. Relator's Standing as to Administrator Barnes in Official Capacity

In what we determine to be the dispositive issue concerning Relator's mandamus action against Administrator Barnes in her official capacity, the trial court found that Relator lacked standing to bring the action. *See Fisher v. Hargett*, 604 S.W.3d 381, 396 (Tenn. 2020) ("The question of standing is one that ordinarily precedes a consideration of the merits of a claim."). Based on its finding regarding standing, the trial court determined that it lacked subject matter jurisdiction to consider the mandamus action against Administrator Barnes. Upon careful review of the record and applicable authorities, we agree with the trial court's conclusion that Relator lacks standing in this regard. At the outset, however, we note some confusion in that the trial court and Administrator Barnes have conflated the doctrines of standing and subject matter jurisdiction as to this issue. Subject matter jurisdiction is not implicated by standing in this instance.

"[S]ubject matter jurisdiction is only implicated [by standing] when 'a statute creates a cause of action and designates who may bring an action' such that 'the issue of standing is interwoven with that of subject matter jurisdiction and becomes a jurisdictional prerequisite.'" *Bowers v. Estate of Mounger*, 542 S.W.3d 470, 480 (Tenn. Ct. App. 2017) (quoting *In re Estate of Smallman*, 398 S.W.3d 134, 149 (Tenn. 2013)). For instance, our Supreme Court has held that standing "is a necessary prerequisite to the court's exercise of subject matter jurisdiction in termination of parental rights cases"

because the statutory scheme creating the cause of action also designates who may bring the action. *See Osborn v. Marr*, 127 S.W.3d 737, 740 (Tenn. 2004). In this case, subject matter jurisdiction is not implicated by standing in the mandamus action because the statutory scheme governing writs of mandamus, codified at Tennessee Code Annotated § 29-25-101 to -109 (2012), does not designate or limit who may bring a mandamus action.[4] Nonetheless, standing, raised as an issue by Administrator Barnes in her motion to dismiss, is a threshold issue of justiciability in the instant mandamus action. *See Reguli v. Guffee*, No. M2015-00188-COA-R3-CV, 2016 WL 6427860, at *2 (Tenn. Ct. App. Oct. 28, 2016), *perm. app. denied* (Tenn. Feb. 16, 2017) ("Standing is a threshold requirement for actions seeking declaratory relief as well as those for writs of mandamus.").

Concerning the justiciability doctrine of standing, our Supreme Court has elucidated:

> Courts employ the doctrine of standing to determine whether a particular litigant is entitled to have a court decide the merits of a dispute or of particular issues. *Warth v. Seldin*, 422 U.S. 490, 498, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975); *Knierim v. Leatherwood*, 542 S.W.2d 806, 808 (Tenn. 1976) (holding that courts use the standing doctrine to decide whether a particular plaintiff is "properly situated to prosecute the action."); *City of Brentwood v. Metropolitan Bd. of Zoning Appeals, et al.*, 149 S.W.3d 49, 55 (Tenn. Ct. App. 2004), *perm. app. denied* (Tenn. Sept. 13, 2004). Grounded upon "concern about the proper—and properly limited— role of the courts in a democratic society," *Warth*, 422 U.S. at 498, the doctrine of standing precludes courts from adjudicating "an action at the instance of one whose rights have not been invaded or infringed." *Mayhew v. Wilder*, 46 S.W.3d 760, 767 (Tenn. Ct. App. 2001), *perm. app. denied* (Tenn. April 30, 2001). The doctrine of standing restricts "[t]he exercise of judicial power, which can so profoundly affect the lives, liberty, and

---

[4] The trial court also found that it lacked subject matter jurisdiction specifically over Relator's requests for "compensation, reimbursement, indemnification or reparation" against Administrator Barnes because the court found that as claims against Hamilton County, these were subject to the exclusive jurisdiction of the circuit court pursuant to Tennessee Code Annotated § 29-20-307 of the Tennessee Governmental Tort Liability Act. However, Relator has adamantly argued, both before the trial court in the hearing on his motions to set aside the dismissal orders and on appeal, that he was not seeking personal tort damages in his petition. We therefore deem any issues as to the trial court's dismissal of possible tort claims and damages requests to have been waived by Relator. *See Hodge v. Craig*, 382 S.W.3d 325, 334 (Tenn. 2012) ("Appellate review is generally limited to the issues that have been presented for review." (citing Tenn. R. App. P. 13(b))).

property of those to whom it extends, . . . to litigants who can show 'injury in fact' resulting from the action which they seek to have the court adjudicate." *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 473, 102 S. Ct. 752, 70 L. Ed. 2d 700 (1982). Without limitations such as standing and other closely related doctrines "the courts would be called upon to decide abstract questions of wide public significance even though other governmental institutions may be more competent to address the questions and even though judicial intervention may be unnecessary to protect individual rights." *Warth*, 422 U.S. at 500; *see also DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, [333-34], 126 S. Ct. 1854, 1856, 164 L. Ed. 2d 589 (2006) (explaining that standing enforces the constitutional case-or-controversy requirement that is "crucial in maintaining the 'tripartite allocation of power' set forth in the Constitution").

To establish standing, a plaintiff must show three "indispensable" elements "by the same degree of evidence" as other matters on which the plaintiff bears the burden of proof. *Petty v. Daimler/Chrysler Corp.*, 91 S.W.3d 765, 767 (Tenn. Ct. App. 2002), *perm. app. denied* (Tenn. Sept. 9, 2002). First, a plaintiff must show a distinct and palpable injury: conjectural or hypothetical injuries are not sufficient. *City of Brentwood*, 149 S.W.3d at 55-56; *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992). Standing also may not be predicated upon an injury to an interest that the plaintiff shares in common with all other citizens. *Mayhew*, 46 S.W.3d at 767. Were such injuries sufficient to confer standing, the State would be required to defend against "a profusion of lawsuits" from taxpayers, and a purpose of the standing doctrine would be frustrated. *See Parks v. Alexander*, 608 S.W.2d 881, 885 (Tenn. Ct. App. 1980) (stating that one purpose of standing is to protect the State from a "profusion of lawsuits").

The second essential element of standing is a causal connection between the claimed injury and the challenged conduct. *Mayhew*, 46 S.W.3d at 767. A plaintiff may satisfy this element by establishing the existence of a "fairly traceable" connection between the alleged injury in fact and the defendant's challenged conduct. *DaimlerChrysler Corp.*, 547 U.S. at [342], 126 S. Ct. at 1861. The third and final element necessary to establish standing is a showing that the alleged injury is capable of being redressed by a favorable decision of the court. *Petty*, 91 S.W.3d at 767; *DaimlerChrysler Corp.*, 547 U.S. at [342], 126 S. Ct. at 1861.

*Am. Civil Liberties Union of Tenn. v. Darnell*, 195 S.W.3d 612, 619-20 (Tenn. 2006) (footnote omitted).

In determining that Relator lacked standing to bring this action against Administrator Barnes, the trial court determined that Relator had failed to establish the first element of constitutional standing, "a distinct and palpable injury." *See Darnell*, 195 S.W.3d at 619. The court specifically found in pertinent part:

> [Relator] seeks a writ of mandamus under T.C.A. 68-5-104. . . . [T]he only subsection of the statute for which a writ could issue to [Administrator] Barnes is T.C.A. 68-5-104(a) which states it is the duty of the local health authorities, on receipt of a report of a case of a communicable disease, to confirm the diagnosis, to determine the source of the disease and to take such steps as may be necessary to isolate or quarantine the affected person. However, nowhere in his petition does Relator claim to be someone who was declared to be subject to isolation or quarantined. Nor does Relator seek a writ ordering [Administrator] Barnes to confirm his diagnosis that required Relator to be quarantined. The Court determines that Relator failed to allege that he sustained a concrete, injury in fact.

> Thus as additional grounds, the Court determines that Relator lacks standing to have a writ issued pursuant to T.C.A. 68-5-104, because Relator failed to allege that he was quarantined or escaped from quarantine, so as to demonstrate a right to relief under the statute. Further as he has alleged no right to relief under the statute then it follows there is no clear ministerial duty that Barnes must perform as a remedy.

(Additional citations omitted.) Relator has not asserted that he was subject to isolation or quarantine pursuant to the statute under which he seeks a writ of mandamus. However, Relator takes issue with the court's finding in this regard, asserting that the injuries he alleged were not due to Administrator Barnes's following Tennessee Code Annotated § 68-5-104 and isolating or quarantining a case of communicable disease but to her purportedly not following the statute and issuing a directive without isolation or quarantine of "a case." Relator essentially situates himself as a member of the general public in Hamilton County subject to the county health department's directive.

In a subsequent section of its dismissal order as to Administrator Barnes, the trial court, citing *Darnell*, 195 S.W.3d at 624, considered whether Relator lacked standing because the injury he alleged in his petition was "to an interest that [Relator] shares in

common with all citizens." In relevant part and citing Relator's petition, the court specifically found:

> Relator asks this Court to "deal with him *as one of the people of Tennessee, **not** as a person or an individual*"; demands "remedy for the extraordinary irreparable harm done to him *and the state of Tennessee*"; and alleges "that he *and the state of Tennessee* are being irreparably injured by respondents." In fact the "*entire injury is to the state of Tennessee*," and "*jeopardizes everyone in the state of Tennessee*," so Relator sues so that dignity be restored *to the people*, and demanded a peremptory writ *to benefit the public at large*.

> The above allegations demonstrate that Relator seeks relief that no more benefits the Relator than it does the public at large. Relator failed to allege how the Administrator's actions injured Relator in a concrete and personal way. Nor has Relator alleged some extraordinary damage to him personally, beyond that of the rest of the community. As set forth in *Darnell*, supra, standing may not be predicated upon an injury to an interest that the Relator shares in common with all other citizens.

> Thus the Relator has failed to meet the first element of the irreducible constitutional minimum of standing as Relator failed to allege that he has suffered a particularized concrete injury in fact. Thus without a personal concrete injury, there is no conduct of [Administrator] Barnes to challenge nor is there any injury for this Court to remedy.

(Internal citations to Relator's petition omitted; emphasis added by trial court.) Upon careful review, we agree with the trial court's conclusion that Relator failed to allege a particularized concrete injury in fact not common to the general public. *See Mayhew v. Wilder*, 46 S.W.3d 760, 767 (Tenn. Ct. App. 2001) ("In determining whether the plaintiff has a personal stake sufficient to confer standing, the focus should be on whether the complaining party has alleged an injury in fact, economic or otherwise, which distinguishes that party, in relation to the alleged violations, from the undifferentiated mass of the public." (quoting 32 Am. Jur. 2d *Federal Courts* § 676 (1995))).

Relator contends that the individual injuries he alleged in the affidavit he attached to his petition were sufficient, when taken as true at the motion to dismiss stage, to establish a particularized concrete injury in fact to him specifically. We disagree. In his affidavit, Relator averred that he had suffered two "arrest threats": one occurring in July 2020 when Hamilton County Sheriff's officers insisted that he vacate the courthouse premises because he refused to wear a mask and one occurring in April 2020 when he

exited his vehicle while attending a "parking lot" worship service and was told by a police officer that he had to stay in his vehicle or risk arrest; a "religious injury" when his church conducted online services for several months and then promulgated a rule that masks must be worn in the church building when in-person services resumed; an "economic injury" because his ability to buy and sell goods and services had been impaired; and an "honest government services injury" because his "right of free association" with other Hamilton County residents had been impaired.

In its order denying Relator's motion to alter or amend, the trial court found that "only paragraphs 1 and paragraphs 23-24 of the affidavit arguably could state any particularized harm allegedly suffered by Relator." The paragraphs referred to by the trial court are those in Relator's affidavit in which he alleged "[a]rrest threat[s]," stating as follows:

> On July 31, 2020, deputies of Hamilton County sheriff's office threw [Relator] out of Hamilton County courthouse after imposing an illegal condition upon his entry, that of a "face mask," which he reasonably understands they had no authority to impose as he exercises his rights, obligations and duties pursuant to the Tennessee constitution Article 1, section 17, such as the right to enter a public building and courtroom as a member of the public and securing that the courts will be open.
>
> * * *
>
> A second threat of arrest occurred when [Relator] stepped out of his car during a worship service at Metro Tabernacle in Chattanooga on or about April 12, 2020.
>
> The officer demanded [Relator] to get back into his car, and said if he didn't, [Relator] would be arrested as a violator of Mayor Andy Berke's social distancing orders and of mayoral "permission" to the church for its governors to lead worship – but only in parked cars.
>
> This command against [Relator's] liberty interests was on private property, injuring [Relator] in the free exercise of his religious tenets or convictions, and other secured rights, protected by the bill of rights of the Tennessee constitution.

(Paragraph numbering omitted.) The trial court found that in these paragraphs, Relator had not alleged that Administrator Barnes injured him but rather that "Relator only alleged certain deputies and certain police officers injured Relator."

We agree with the trial court that any direct connection between these alleged arrest threats and Administrator Barnes's action in authorizing the county health department directive with which Relator takes issue in his petition is tenuous at best. In addition to law enforcement officers, Relator also implicated the former city mayor, whom Relator did not name as a respondent in his petition. Assuming, *arguendo*, that the mayor, the law enforcement officers, and the religious organization described in Relator's affidavit were acting in response to the county health department's directive, Relator was nonetheless under the same requirements as others entering the courthouse or participating in the religious service. Relator was not singled out for these requirements and was not prohibited from entering the courthouse or participating as long as he followed them. *See Darnell*, 195 S.W.3d at 624 ("Standing may not be predicated upon injury to an interest that a plaintiff shares in common with all citizens.").

Likewise, Relator's allegations of a "religious injury" because the leadership of his church decided to conduct services online for several months and then require that masks be worn in the church building when in-person services resumed was an injury common to all parishioners of that church. Similarly, Relator's claimed "economic injury" due to impairment in his ability to buy and sell goods and services and his claimed "honest government services injury" were injuries experienced by the general public during the time period in which they were experienced by Relator. To some degree, Relator appears to claim that he was particularly affected because he is a member of the media. However, as noted above, Relator's specific allegations regarding an inability to access public buildings were based on his assertion that he should not have been required to wear a mask in order to enter, a requirement shared by all members of the public at the time.

Relator alternatively posits that a particularized, concrete injury in fact is not necessary to standing in a mandamus action, relying in part on a description of the procedural requirements for a mandamus action set forth in *Blair v. State ex rel. Watts*, 555 S.W.2d 709, 711 (Tenn. 1977). However, *Blair* does not stand for the proposition that a particularized injury in fact is not necessary for standing in a mandamus action. *See id.* at 710 (determining that an issue concerning one plaintiff's standing was moot because two plaintiffs had "a special interest in this litigation and are subject to a special injury not common to the public generally"). *See also Sachs v. Shelby Cnty. Election Comm'n*, 525 S.W.2d 672, 673 (Tenn. 1975) ("[I]it is the settled law in this state that private citizens, as such, cannot maintain an action complaining of the wrongful acts of public officials unless such private citizens aver special interest or a special injury not common to the public generally." (quoting *Bennett v. Stutts*, 521 S.W.2d 575, 576 (Tenn.1975))).

We determine that the trial court properly concluded that Relator did not have standing to bring this mandamus action against Administrator Barnes upon finding that Relator had failed to establish "a particularized concrete injury in fact" as the first essential element of standing. *See Darnell*, 195 S.W.3d at 619 (explaining that each of the three elements required to establish standing is "indispensable" (quoting *Petty v. Daimler/Chrysler Corp.*, 91 S.W.3d 765, 767 (Tenn. Ct. App. 2002))). Upon thorough review of Relator's petition and the record as a whole, we also determine that Relator failed to establish the second element of a causal connection between his claimed injuries and his challenge to what he alleged to be the lack of implementation of Tennessee Code Annotated § 68-5-104 by Administrator Barnes. We decline to comment on the third element, the redressibility prong. *See, e.g.*, *Darnell*, 195 S.W.3d at 625 ("Because standing to be heard requires the Plaintiffs to fulfill three requirements—cognizable injury, causation, and redressibility—it is not necessary for us to reach the issue of whether Plaintiffs have proved that the relief requested from this Court would redress the putative injuries of which they complain.").

The trial court did not err in dismissing Relator's mandamus action as to Administrator Barnes in her official capacity for lack of standing. The trial court did make what we determine to be a harmless error in this instance of equating Relator's lack of standing to a lack of subject matter jurisdiction for the court. Given Relator's lack of standing, his mandamus action was not justiciable against Administrator Barnes, and the trial court therefore did not err in dismissing the action. In contrast to Relator's argument that the separation of powers doctrine was violated by the dismissal of his action, "standing enforces the constitutional case-or-controversy requirement that is 'crucial in maintaining the '"tripartite allocation of power"' set forth in the Constitution.'" *See Darnell*, 195 S.W.3d at 619 (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 333-34 (Tenn. Ct. App. 2002)). Relator asks this Court to employ an "exceptional circumstances" exception to justiciability, relying on exceptions to the mootness doctrine of justiciability set forth, for example, in *Scripps Media, Inc. v. Tenn. Dep't of Mental Health & Substance Abuse Servs.*, 614 S.W.3d 700, 705 (Tenn. Ct. App. 2019). We do not find such an exception applicable in this case and decline Relator's request in this regard.

B. Administrator Barnes in Personal Capacity

The trial court dismissed Relator's action against Administrator Barnes in her personal capacity for failure to state a claim upon which relief could be granted pursuant to Tennessee Rule of Civil Procedure 12.02(6). In pertinent part, the court stated in its dismissal order:

Relator alleges that [Administrator] Barnes "is sued in her official and **private** capacity, is responsible for having her health officer, Dr. Paul Hendricks, issue Directive No. 1 of the Hamilton County health department, effective July 10, 2020, pursuant to the governor's statewide emergency order of March 12, 2020." Relator allege[s] that [Administrator Barnes's] "unwarranted official acts" ["]violated the separation of powers." This Court discerns that these allegations are only against [Administrator] Barnes in her official capacity as Administrator of the Hamilton County Health Department. Moreover, the Court determines that nowhere within the 212 paragraphs in his Petition does Relator allege any claim against [Administrator] Barnes in her personal capacity. Therefore the Court further concludes as a matter of law that the motion to dismiss the action against Rebekah Barnes in her individual capacity is well-taken.

As with his action against Governor Lee, Relator asserts on appeal against Administrator Barnes that his "action is upon . . . the woman Rebe[k]ah Barnes," in her official and in her personal capacity, alleging that "acting under color of law," Administrator Barnes as an individual "harm[ed] relator, and fraudulently." Upon our review of Relator's petition, we agree with the trial court that Relator made no actual allegations against Administrator Barnes in her personal capacity and that all allegations stemmed from Administrator Barnes's official actions or what Relator claimed those official actions should have been. Again construing the petition liberally, we determine that Relator can prove no set of facts that would entitle Relator to relief against Administrator Barnes in her personal capacity. *See Webb*, 346 S.W.3d at 426. The trial court did not err in granting Administrator Barnes's Rule 12.02(6) motion to dismiss as to Relator's action against Administrator Barnes in her personal capacity.

## VI. Due Process

Relator asserts multiple instances of what he alleges were the trial court's violations of his due process rights. Most prominent among these are his allegations that the trial court failed to treat his petition as an action to be "disposed of immediately" and "mistreat[ed]" his motions to strike Respondents' motions to dismiss as responses to those motions. Relator also argues, essentially *ipso facto*, that the trial court's rulings not in his favor in denying his motions for judgment *pro confesso* and default judgment and in granting Administrator Barnes's motions for an enlargement of time in which to file a response to the petition and for statutory attorney's fees were violations of his due process rights. Additionally, Relator argues that the chancellor demonstrated bias by enforcing Tennessee Supreme Court orders related to the Covid-19 pandemic during the

pendency of this action.[5]  Upon careful review of the record, we discern no violations of Relator's due process rights.

As our High Court has explained:

> Due process, at its most basic level, "mean[s] fundamental fairness and substantial justice."  *Vaughn v. State*, 3 Tenn. Crim. App. 54, 456 S.W.2d 879, 883 (1970).  Due process acts as a constraint on "both the procedures used by the government and the substance of legislation interfering with personal liberties."  2 Chester James Antieau & William J. Rich, *Modern Constitutional Law* § 40.00, at 558 (2d ed. 1997) [ ].  As to the first constraint, one of the most basic due process requirements "is a fair trial in a fair tribunal."  6A Tenn. Jur. *Constitutional Law* § 77.

*State v. White*, 362 S.W.3d 559, 566 (Tenn. 2012).  Moreover, "procedural due process ensures that litigants are 'given an opportunity to have their legal claims heard at a meaningful time and in a meaningful manner.'"  *In re Walwyn*, 531 S.W.3d 131, 138 (Tenn. 2017) (quoting *Lynch v. City of Jellico*, 205 S.W.3d 384, 391 (Tenn. 2006)).

Relator predicates his argument that the trial court should have "immediately" disposed of his mandamus petition on the use of "forthwith" in Tennessee Code Annotated § 29-25-102 (2012), which provides:

(a)     The writ is either alternative or peremptory.

(b)     The alternative writ commands the defendant to do the act required to be performed or show cause before the court <u>forthwith</u>, or at a specified time and place, why the defendant has not done so, and that the defendant then and there return the writ.

(c)     The peremptory writ commands the defendant to do the act and return the writ accordingly.

---

[5] Within his argument section primarily addressing alleged due process violations, Relator contends that the trial court committed an "ADA violation" by requiring masks in the courtroom because Relator stated during a hearing that he had difficulty hearing people who spoke while wearing masks.  Relator cites to no further authority for this alleged violation of the federal Americans with Disabilities Act of 1990 or the Tennessee Disability Act, and we therefore deem any issue concerning an "ADA violation" to be waived. *See Newcomb v. Kohler Co.*, 222 S.W.3d 368, 401 (Tenn. Ct. App. 2006) ("The failure of a party to cite to any authority or to construct an argument regarding his position on appeal constitutes waiver of that issue.").

(Emphasis added.) However, "forthwith" in the above statute refers to the speed with which a defendant must respond once an alternative writ is issued by a court. It does not refer to the speed with which a trial court should consider whether issuance of a writ is warranted. Our review of the record indicates that in this case, the trial court set all hearings and entered all resultant orders within a reasonable period of time and with an aim toward judicial efficiency.

Relator also insists that the trial court improperly treated his motions to strike Respondents' motions to dismiss as responses to those motions. He argues that the court violated his due process rights by declining to consider whether to strike Respondents' motions to dismiss. In its orders respectively denying Relator's motions to alter or amend the judgments, the trial court noted that it heard argument concerning both of Relator's motions to strike during the January 11, 2021 hearing and found the motions to be based on Relator's assertions that each of the Respondents was in default. Having ruled that neither Governor Lee nor Administrator Barnes was in default, the court determined that Relator's motions to strike were in substance responses in opposition to the motions to dismiss and proceeded accordingly. As this Court has explained:

> Ordinarily, a motion to strike is not the proper vehicle by which to strike an entire pleading, but only those portions which are objectionable. However, a motion to strike can be used to eliminate an entire pleading, including a complaint, where its allegations are offensive, scurrilous or in gross violation of Rule 8, Tennessee Rules of Civil Procedure.

*Curve Elementary Sch. Parent & Teacher's Org. v. Lauderdale Cnty. Sch. Bd.*, 608 S.W.2d 855, 857 (Tenn. Ct. App. 1980) (internal citations omitted).

We note that nothing in Respondents' motions to dismiss could be considered "offensive, scurrilous or in gross violation of Rule 8, Tennessee Rules of Civil Procedure" (the rules of pleadings). *See id.* Determining that the trial court properly looked to the substance of the pleadings, we find no violation of due process in the trial court's treatment of Relator's motions to strike as responses in opposition to Respondents' motions to dismiss. *See Stewart*, 368 S.W.3d at 463 ("Courts must give effect to the substance, rather than the form or terminology of a pleading.").

Concerning the trial court's decisions in favor of Respondents in, *inter alia*, denying Relator's motions for default judgment and judgment *pro confesso* and in granting Administrator's motions for an extension of time and for statutory attorney's fees, we also find no violation of Relator's due process rights in these rulings. In part, Relator's arguments in this regard are based on his assertion, addressed above, that the trial court did not dispose of the mandamus action with sufficient speed. Additionally,

Relator essentially argues that his due process rights were violated because the trial court did not rule in his favor. To the contrary, the record indicates that Relator was heard on each of his motions and that the trial court set forth its reasoning for each decision. In short, Relator was heard "at a meaningful time and in a meaningful manner." *See In re Walwyn*, 531 S.W.3d at 138 (quoting *Lynch v. City of Jellico*, 205 S.W.3d 384, 391 (Tenn. 2006)).

Finally, Relator contends that the chancellor was "biased" toward Respondents and that the chancellor showed "partiality" against the substance of his action through the chancellor's enforcement of courtroom pandemic protocol. Our review of the record, including transcripts of three hearings, reveals no bias or partiality exhibited by the chancellor toward any of the parties during the instant proceedings. In its order denying Relator's motion to alter or amend the order granting Governor Lee's motion to dismiss, the trial court stated in pertinent part:

> On the one hand, Relator asserts there was "prejudicial due process violations depriving relator of his right to respond and be heard." Yet on the other hand Relator objected to the hearing on this instant motion to alter that he filed. As the record reflects, this Court has entertained three hearings in this matter, and Relator received due process. Relator, with his continuing arguments for default, just opposes Respondents receiving due process.

As the court noted, Relator objected to a hearing on his motions to alter or amend, asserting that a hearing further delayed action on his mandamus petition.

We agree with the trial court's finding that Relator received due process in the instant proceedings. Moreover, the record does not demonstrate that Relator ever filed in the trial court a motion to recuse the chancellor pursuant to Tennessee Supreme Court Rule 10B. The trial court fully considered and ruled upon Relator's arguments contained in his petition and subsequent pleadings, as demonstrated by the court's dismissal orders and orders denying Relator's motions to alter or amend the dismissal orders. As such, Relator was afforded fundamental fairness and the opportunity to have his arguments considered. Relator has demonstrated no deprivation of his due process rights.

## VII. Attorney's Fee Award

Within his argument section concerning due process in his principal brief on appeal, Relator asserts that the trial court "[i]mpos[ed] illicit costs" on him in the amount of "$10,150.00 plus expenses of $416.82." He then asserts that Governor Lee was not entitled to this award of fees and expenses. However, in this matter, the trial court

awarded to Administrator Barnes attorney's fees in the amount of $10,150.00 plus costs of $416.82, which the court found to be reasonably related to Administrator Barnes's defense of Relator's action against her in her personal capacity. This award was made pursuant to Tennessee Code Annotated § 29-20-113(a) (Supp. 2021), which provides in relevant part:

> [I]f a claim is filed with a Tennessee or federal court, the Tennessee claims commission, board of claims, or any other judicial body established by the state or by a governmental entity of the state, against an employee of the state or of a governmental entity of the state in the person's individual capacity, and the claim arises from actions or omissions of the employee acting in an official capacity or under color of law, and that employee prevails in the proceeding as provided in this section, then the court or other judicial body on motion shall award reasonable attorneys' fees and costs incurred by the employee in defending the claim filed against the employee.

The court made no such award to Governor Lee.

Moreover, Relator did not raise an issue in his statement of the issues concerning the award of statutory attorney's fees and costs to Administrator Barnes. *See Forbess v. Forbess*, 370 S.W.3d 347, 356 (Tenn. Ct. App. 2011) ("We may consider an issue waived where it is argued in the brief but not designated as an issue."). Considering Relator's failure to raise attorney's fees as an issue in his statement of the issues, coupled with his lack of cogent argument as to the statutory basis of the award to Administrator Barnes, we deem any issue regarding the trial court's award of attorney's fees to be waived.

## VIII. Remaining Issues

Having determined that the trial court did not err in dismissing Relator's petition (1) as to Governor Lee in his official capacity due to the court's lack of subject matter jurisdiction, (2) as to Administrator Barnes in her official capacity due to Relator's lack of standing, and (3) as to both Respondents in their respective personal capacities for failure to state a claim upon which relief could be granted, and having further determined that Relator's due process rights have not been violated in this action, we conclude that any remaining issues raised by Relator are pretermitted as moot.

## IX. Conclusion

For the foregoing reasons, we affirm the judgments of the trial court dismissing Relator's petition. We clarify, however, that Relator's lack of standing concerning his mandamus action against Administrator Barnes did not equate to a lack of subject matter

jurisdiction in the trial court.  We remand this case for enforcement of the judgments and collection of costs below.  Costs on appeal are taxed to the appellant, David Jonathan Tulis.


        s/ Thomas R. Frierson, II_____
        THOMAS R. FRIERSON, II, JUDGE